UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALYSSA NOBRIGA, CLAUDIA SAMPEDRO, PAOLA CAÑAS and SANDRA VALENCIA, <br><br> Plaintiffs, <br><br> v. <br><br> RAKITA, INC. d/b/a TRACKSIDE BAR & GRILL a/k/a TRACKSIDE and OSCAR ALMONTE, <br><br> Defendants. | C.A. No. <br><br><br> **COMPLAINT** <br><br><br> **(Jury Trial Demanded)** |

Plaintiffs ALYSSA NOBRIGA, CLAUDIA SAMPEDRO, PAOLA CAÑAS and SANDRA VALENCIA, (collectively, "Plaintiffs"), file this Complaint against RAKITA, INC., d/b/a TRACKSIDE BAR & GRILL a/k/a TRACKSIDE and OSCAR ALMONTE (collectively, "Defendants") respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, TRACKSIDE BAR & GRILL a/k/a TRACKSIDE located at 204 East Main St, Bound Brook, New Jersey 08805 (**hereinafter referred to as the "Night Club" or "Trackside"**).

2. As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Misappropriation of Likeness; d) Unfair Competition/False Endorsement N.J.S.A. 56:4-1, et.seq.; e) Negligence/Respondeat Superior; and f) Unjust Enrichment.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using

any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant Rakita, Inc., is a corporation formed under the laws of the state of New Jersey, with its principal place of business located at 204 E Main St, Bound Brook, New Jersey, 08805. Upon information and belief, Rakita, Inc. operates Trackside Bar & Grill, which is located at 204 East Main St, Bound Brook, New Jersey 08805.

8. According to publicly available records, Defendant Oscar Almonte, is an individual operating under the laws of New Jersey, who is an Owner and/or CEO of Rakita, Inc. Upon information and belief, Oscar Almonte can be located at 512 Thompson Ave, Bound Brook, New Jersey 08805.

9. Venue is proper in the United States District Court for the District of New Jersey because Defendants' principal place of business is located in Bound Brook, New Jersey (Somerset County).

10. A significant portion of the alleged causes of action arose and accrued in Bound Brook, New Jersey and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Bound Brook, New Jersey.

## PARTIES

*Plaintiffs*

11. Plaintiff Alyssa Nobriga ("Nobriga") is a well-known professional model, and a resident of Los Angeles County, California.

12. Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

13. Plaintiff Paola Cañas ("Cañas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

14. Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Colombia.

*Defendants*

15. Defendant, Rakita, Inc., is a corporation formed under the laws of the state of New Jersey and registered to conduct business in New Jersey. During times relevant to this action, Rakita, Inc. operated Trackside.

16. According to publicly available records, Oscar Almonte, in their capacity as principal, owner and/or CEO of Rakita, Inc., maintained operational control over Trackside including all advertising relating thereto.

17. Service of process may be perfected upon Defendant Rakita, Inc. by serving the registered agent for service of process, Oscar Almonte, who can be located at 204 E Main St, Bound Brook, NJ 08805.

## FACTUAL ALLEGATIONS

18. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

19. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

20. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or

affiliated with Defendants.

21. In the case of each Plaintiff, this apparent claim was false.

22. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

23. No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

24. Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

*Plaintiffs' Individual Backgrounds and Careers*

25. Nobriga is trained as a psychotherapist and works as a professional coach with individuals and corporations, both nationally and internationally. She obtained her master's degree in clinical psychology, specializing in Mind-Body Psychotherapy from The Chicago School of Professional Psychology. Nobriga is currently on faculty at the University of Santa Monica where she holds a second master's degree in Spiritual Psychology, with an emphasis on Consciousness, Health and Healing. She is a graduate of The School for The Work, has extensive training in Imago Couples Therapy as well as an advanced certification from the Hakomi Institute in mindfulness-based therapeutic practices and is certified as a success coach. Nobriga is a spiritual advisor for CEOs and senior executives, she facilitates transformational group intensives and women's leadership and empowerment workshops. She also leads wellness retreats around the world centered on mindfulness and conscious living as well as 6-month mastermind intensives supporting women in standing forward as leaders and soul-centered professional coaches. She is a contributor to various publications such as The Huffington Post, Positively Positive and The Daily Love and is a featured expert on Deepak Chopra's YouTube channel. Nobriga 's enthusiasm for this work has led her to develop a unique way of blending multiple modalities and life experiences

to support people in a soulful and practical way. Her intention and vocation is to assist others in leading more open, authentic, loving, and fulfilling lives.[1]

26. That we know of, Nobriga is depicted in the photo in Exhibit "A" to promote Trackside on its Facebook page. This Image was intentionally altered to make it appear that Nobriga was either an employee working at Trackside, that she endorsed Trackside, or that she was otherwise associated or affiliated with Trackside.

27. Nobriga has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

28. Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).

29. That we know of, Sampedro is depicted in the photo in Exhibit "B" to promote Trackside on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Sampedro was either an employee working at Trackside, that she endorsed Trackside, or that she was otherwise associated or affiliated with Trackside.

30. Sampedro has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

will continue to suffer, damages as a result of same.

31. Cañas is a Colombian-born model now residing and working in the United States. With over twelve years in the industry, she has found great success as a model, host, runway model, and actress. Cañas has worked runway shows in her native Colombia, as well as in Mexico, Ecuador, the United States, and most recently Paris, France. She is best known for appearing on the cover of Playboy Mexico in May 2018. She has also led international campaigns and was a contracted model for Curve's worldwide lingerie line. In Dubai, United Arab Emirates, Cañas was chosen as the face of the Masters Golf Tournament and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked with international brands and labels such as SOHO, KISS Underwear, Salon International, Zona Rosa, and Esteban Escobar. Cañas has appeared on numerous TV shows like FOX Sports and on networks such as Telemundo and TV Azteca. She continues to build an impressive profile and is in high demand in Miami, FL, New York, NY, and Los Angeles, CA. Cañas has over 1 million Instagram followers

32. That we know of, Cañas is depicted in the photo in Exhibit "C" to promote Trackside on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Cañas was either an employee working at Trackside, that she endorsed Trackside, or that she was otherwise associated or affiliated with Trackside.

33. Cañas has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34. Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Bésame Lingerie. She currently has 151,000 Instagram followers and over 72,300 X (formerly known as Twitter) followers.

35. That we know of, Valencia is depicted in the photo in Exhibit "D" to promote Trackside on its Facebook page. This Image was intentionally altered to make it appear that Valencia was either an employee working at Trackside, that she endorsed Trackside, or that she was otherwise associated or affiliated with Trackside.

36. Valencia has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business Activities and Misappropriation*

37. Defendants operate (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

38. Defendants own, operate, and control Trackside's social media accounts, including its Facebook, Twitter, and Instagram accounts.

39. Defendants used Trackside's Facebook, Twitter, and Instagram accounts to promote Trackside's , and to attract patrons.

40. Defendants did this for their own commercial and financial benefit.

41. Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Trackside, endorsed Trackside, or was otherwise associated or affiliated with Trackside.

42. Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Trackside to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

43. Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Trackside, and at no point have any of the Plaintiffs ever endorsed Trackside or otherwise been affiliated or associated with Trackside.

44. All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

45. Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

46. Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

47. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

48. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

49. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

50. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Trackside.

51. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

52. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Trackside.

53. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

54. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

55. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Trackside's website, Twitter, Facebook, or Instagram accounts.

56. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

57. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

58. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein

59. Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment , or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

60. Thus, this was done in furtherance of Defendants' commercial benefit.

61. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through

secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

62. Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

63. As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

64. Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants'

65. establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

66. Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

67. Defendants knew that their use of P Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishment.

68. Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

69. As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

70. Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

71. Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

72. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

73. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

74. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendants and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits

a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

75. Defendants used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use their image in order to advertise, promote, and market Defendants' businesses, Defendants' establishment, and/or Defendants' establishment events and activities.

76. Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendants' businesses, Defendants' establishment, and/or Defendants' events and activities as described in this Complaint was false and misleading.

77. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

78. Defendants' false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants' establishment, as to the general quality of attendees and participants of Defendants' establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendant establishment events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities.

79. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, or Defendant establishment events and activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants' establishment, visit Defendants' establishment, and participate in events at Defendants' establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendants' establishment, visit Defendants' establishment and take part in the events at Defendants' establishment.

80. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' establishment and their activities and attracting clientele to Defendants' establishment.

81. Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

82. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

83. Defendants' wrongful conduct as described herein was willful.

84. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

85. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

86. The method and manner in which Defendants used the image of Plaintiffs further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their image to advertise Defendants' businesses.

87. Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendants' establishment.

88. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Misappropriation of Likeness)

89. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

90. Plaintiffs have a right to control the commercial use of their names, images, and likenesses. Under New Jersey law, the unauthorized use of a person's image or likeness for a predominately commercial purpose is unlawful.

91. Defendants' use of Plaintiffs' images and likenesses to advertise their business constitutes a use for commercial purposes.

92. Defendants' use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value.

93. Defendants never obtained Plaintiffs' consent for the use of their images and likenesses.

94. Defendants' use of each Plaintiffs' photographs and likenesses was willful and deliberate.

95. As a direct and proximate result of Defendants' scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendants' establishment, Defendants enjoyed increased revenues and profits.

96. As a further direct and proximate result of Defendants' deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

## FOURTH CAUSE OF ACTION
### (Unfair Competition/False Endorsement N.J.S.A. 56:4-1, *et.seq.*)

97. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

98. The aforesaid acts of Defendants' unauthorized use of Plaintiffs' images and likenesses in connection with creating the false impression that they were affiliated with and endorsed Defendants' business constitutes unfair competition under N.J.S.A. 56:4-1.

99. As a direct and proximate result of Defendants' scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendants' establishment, Defendants enjoyed increased revenues and profits.

100. As a further direct and proximate result of Defendants' deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

101. Defendants' wrongful and deliberate conduct has caused significant damage to Plaintiffs, both directly and indirectly, and Plaintiffs respectfully request treble damages as authorized by N.J.S.A. 56:4-2.

## FIFTH CAUSE OF ACTION
### (Negligence/Respondeat Superior)

102. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

103. Plaintiffs are further informed and believe and hereon allege that Defendants maintains or should have maintained employee policies and procedures which govern the use of

intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

104. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

105. Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

106. Similarly, Defendants further owed a duty of care to Plaintiffs to ensure that their promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendants.

107. Defendants breached their duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

108. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and New Jersey law, were not violated. Defendants breached their duty of care to Plaintiffs by their negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

109. Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

110. As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
**(Unjust Enrichment)**

111. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

112. As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Defendants' establishment to the general public and potential clientele.

113. Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendants .

114. Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

115. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

116. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their establishment.

117. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

118. As such, Plaintiffs have been damaged in an amount to be determined

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote Trackside's Night Club;

  (c)  For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and N.J.S.A. 56:4-1, *et.seq.*;

  (d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and N.J.S.A. 56:4-1, *et.seq.*;

  (e)  For such other and further relief as the Court may deem just and proper.

|  |  |
|---|---|
| OF COUNSEL:<br>John V. Golaszewski, Esquire*<br>THE CASAS LAW FIRM, PC<br>1325 Avenue of the Americas, 28th Floor<br>New York, NY 10019<br>T: 646-872-3178<br>F: 855-220-9626<br>john@talentrights.law | */s/ Gerald B. Baldino, III*<br>Gerald B. Baldino, III, Esquire<br>Attorney I.D. No. 295012019<br>SACCHETTA & BALDINO<br>24 S. Broad Street<br>Woodbury, NJ 08096<br>P: (856) 845-4400<br>F: (856) 845-0400<br>gbaldino@sbattorney.com<br>*Attorney for Plaintiffs* |

Dated: June 27, 2025

*Pro Hac Vice Application Forthcoming